Case 1:24-mj-00334-MAU   Document 1-1   Filed

Case: 1:24-mj-00334
Assigned to: Judge Upadhyaya, Moxila A.
Assign Date: 10/21/2024
Description: COMPLAINT W/ ARREST WARRANT

## STATEMENT OF FACTS

Your affiant, ███████████ is a Special Agent assigned to the Federal Bureau of Investigation's (FBI) Cleveland Division, Mansfield Resident Agency. In my duties as a Special Agent with the FBI, I have participated in complex investigations involving national security, threatening communications, civil disorders, counterterrorism, narcotics, money laundering, gang activity, and violent crimes against children. Currently, I am tasked with investigating criminal activity in and around the Capitol grounds on January 6, 2021. As a Special Agent, I am authorized by law or by a Government agency to engage in or supervise the prevention, detection, investigation, or prosecution of a violation of Federal criminal laws. As such, I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516 of Title 18, United States Code.

The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification were allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session

of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

**Identification of JEFFREY NEWCOMB**

In April 2023, the FBI received a tip indicating that an individual identified as JEFFREY NEWCOMB of Polk, Ohio, participated in the riot at the U.S. Capitol on January 6, 2021. According to records obtained pursuant to a search warrant served on Google, a device determined to have been in and around a geographic area that includes the interior of the restricted perimeter for the U.S. Capitol Grounds on January 6, 2021, was linked to an account associated with NEWCOMB. Baseline database checks on NEWCOMB revealed an associated, now-deleted Twitter account with the handle @deafwatchman777. The user posted publicly on March 8, 2023, claiming he constructed a 13ft by 10ft custom sign to bring to the January 6, 2021 protest. In this post, the user posted two photos of the sign being displaying in the crowd during the protest and a photo of himself in front of the sign, obscuring his face with an emoji "because bullets are expensive." *See* Image 1.



*Image 1*

Other photos posted by this user account depicted an individual preliminarily identified as NEWCOMB. *See, e.g.*, Image 2. These photos matched the appearance of an individual photographed at the Capitol who handled a large metal-framed "TRUMP" sign on the Capitol's West Plaza. *See* Image 3. On January 6, 2021, that individual wore tinted glasses, a black sweatshirt, a black and white hat, and a tan backpack.



*Image 2*



*Image 3*

Records provided by X.com (formerly Twitter) for the @deafwatchman777 handle revealed a subscriber email address containing NEWCOMB's initials ("jnn") and birth year.

On July 18, 2024, FBI agents conducted physical surveillance of a residential address in Polk, Ohio associated with NEWCOMB. Agents personally observed NEWCOMB on the property and confirmed that he is the same individual depicted in the above and below images from the U.S. Capitol Grounds on January 6, 2021.

### NEWCOMB's Participation in the Events of January 6, 2021

NEWCOMB made additional follow-up Twitter posts using the @deafwatchman777 account on March 8, 2023. In one of these posts, NEWCOMB stated, "I went up to the Capitol but was blocked by pylons so the guys around came and picked it [the "TRUMP" sign] up the proceed to throw it at the police." This post included images of rioters holding the sign on the West Plaza, including one image of rioters pushing the sign into the police line. Image 4.



*Image 4*

In another follow-up post, NEWCOMB stated, "After the cops left, one of the protesters found the sign[] and put it up on the Capitol. (Wasn't me)." This post included an image of a large "TRUMP" sign hanging from the front of the Inaugural Stage. Image 5.



*Image 5*

As part of its investigation, the FBI reviewed multiple MPD body-worn camera ("BWC"), Capitol CCV, and open-source video footage depicting NEWCOMB's conduct at the Capitol on January 6, 2021. The material reviewed shows NEWCOMB bringing the large metal-framed "TRUMP" sign onto Capitol Grounds, escorting the sign close to the police line established on the Capitol's West Plaza, and handing the sign off to others for them to shove the sign into a line of law enforcement officers in an attempt to breach the police line.

Images from the morning of January 6, 2021, depict NEWCOMB moving the sign around Constitution Avenue, NW, and other areas near the "Stop the Steal" rally held near the White House. *See* Images 6 and 7 (NEWCOMB indicated in red).


*Image 6*


*Image 7*

From there, NEWCOMB pulled the sign toward the southwest corner of the Capitol Grounds. Image 8.



*Image 8*

Other rioters assisted NEWCOMB in carrying the sign up the Maryland Walkway, closer to the Capitol Building. Image 9.



*Image 9*

NEWCOMB and the rioters carried the sign into the mob gathered against the police on the West Plaza. Image 10.


*Image 10*

In the minutes leading up to 1:40 p.m., NEWCOMB, with other rioters assisting, passed his giant metal-framed "TRUMP" sign from the southwestern portion of the West Plaza mob toward the center-front of the crowd. The metal sign frame was approximately eight feet tall and ten feet wide, welded with screws, and supported by large casters that were about the size of a person's head. Rioters cheered the sign's arrival and many in the crowd helped pass the sign closer and closer to the police line. NEWCOMB carried the sign by one of its large casters. Image 11.


*Image 11*

At approximately 1:40 p.m., NEWCOMB and the sign reached the police line. NEWCOMB was still carrying the sign. Image 12.


*Image 12*

NEWCOMB and other rioters then started pushing the sign on a path to ram it into the police line. At one point, NEWCOMB fell as he began to walk up the plaza's steps and the sign's progression temporarily paused. NEWCOMB got back up and grabbed the sign once again as the mob resumed pushing the sign forward. Just before the mob was about to hit the police line with the sign, NEWCOMB released the sign, allowing it to move further forward with the mob like a battering ram. As police officers struggled to address the danger caused by the sign, NEWCOMB dropped back and, at one point, supported rioters continuing to shove the sign towards the police line by pushing on the rioters' backs. Image 13.


*Image 13*

As the police were struck by the sign, they easily could have been knocked over due to the frame's sheer size, and the sharp edges and corners were readily capable of causing slicing or splitting injuries. The police worked quickly to pull the sign away from the mob. It ultimately took over a dozen officers to fully move the sign away from the line.

NEWCOMB remained on the West Plaza for some time, until well-after the West Plaza police line fell at approximately 2:30 p.m. and rioters swarmed onto the Inaugural Stage. *See* Image 14.



*Image 14*

Based on the foregoing, your affiant submits that there is probable cause to believe that JEFFREY NEWCOMB violated 18 U.S.C. § 231(a)(3), which makes it unlawful to commit or attempt to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function. For purposes of 18 U.S.C. § 231, a federally protected function means any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof. This includes the Joint Session of Congress where the Senate and House count Electoral College votes.

Your affiant also submits there is probable cause to believe that NEWCOMB violated 18 U.S.C. § 111(a)(1), 111(b), and 2, which make it a crime to forcibly assault, resist, oppose, impede, intimidate, or interfere with any person designated in 18 U.S.C. § 1114 as an officer or employee of the United States while engaged in or on account of the performance of official duties where the acts in violation of this section involve physical contact with the victim and the intent to commit another felony, while using a deadly or dangerous weapon—including to aid and abet in the commission of such offense. Persons designated within section 1114 of Title 18 include any person assisting an officer or employee of the United States in the performance of their official duties.

      Your affiant also submits that there is probable cause to believe that NEWCOMB violated 18 U.S.C. §§ 1752(a)(1) and (2) which make it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do; and (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions.  For purposes of 18 U.S.C. § 1752, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance.

      Finally, your affiant also submits there is probable cause to believe that NEWCOMB violated 40 U.S.C. §§ 5104(e)(2)(D), which makes it a crime to willfully and knowingly utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress.

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 21 day of October, 2024.

_____
MOXILA A. UPADHYAYA
U.S. MAGISTRATE JUDGE